UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.  13-80200-Civ-Gayles/Brannon

GARY CROOKS,

       Petitioner,

vs.

MICHAEL D. CREWS, SECRETARY,
FLORIDA DEPARTMENT OF CORRECTIONS,

       Respondent.
_____/



## REPORT RECOMMENDING DENIAL OF
## § 2254 PETITION FOR WRIT OF HABEAS CORPUS

THIS CAUSE is before the Court on a § 2254 Petition for Writ of Habeas Corpus (DE 1) and Memorandum of Law in Support (DE 12).  Respondent has responded in opposition (DE 26), and Petitioner has replied (DE 39).  After careful consideration of the record, this Court concludes that no evidentiary hearing is required to decide this matter because Petitioner proffers no evidence that would require an evidentiary hearing and the pertinent facts of the case are fully developed in the record.  See Schriro v. Landrigan, 550 U.S. 465, 473–475 (2007); Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004).  This Court concludes, for the reasons discussed below, that Petitioner is not entitled to federal habeas relief.

I.      BACKGROUND

On December 9, 2005, Petitioner was charged by third amended information, filed in the Circuit Court for Palm Beach County, Florida, with the following: Count I- sexual

battery on a person less than 12 years of age, Count II- sexual activity with a child, and Counts III & IV- lewd or lascivious molestation. App. Ex. 1, 50.[1] The information alleged that Petitioner engaged in sexual activity, including oral sex, with C.C. between October 14, 1995 and October 13, 2000, while C.C. was under the age of 12; and the sexual activity continued after C.C. was over the age of 12 but under the age of 18, until February 18, 2005. App. Ex. 1, 50.

A jury trial before the Honorable Sandra K. McSorley began on March 21, 2006. App. Ex. 1, Trial Tr. vol. 1, 1. On March 23, 2006, the jury found Petitioner guilty of all counts. App. Ex. 1, 87-88. As to Count I, Petitioner was sentenced to life imprisonment without possibility of parole, to run concurrent with his sentences received for Counts II & III (15 years), and Count IV (10 years). App. Ex. 1, 92-97.

On April 31, 2006, Petitioner filed a direct appeal to the Fourth District Court of Appeal, arguing, among other things, that the capital sexual battery instruction improperly changed and lessened the proof required and that there was insufficient evidence presented at trial that C.C. engaged in oral sex with Petitioner before reaching 12 years of age. App. Ex. 4. On August 1, 2007, the Fourth District Court of Appeal issued an opinion Per Curiam Affirmed. App. Ex. 7.

Petitioner then filed a 3.850 Motion for Post-Conviction Relief on June 27, 2008, arguing that a Brady violation had occurred due to the State's failure to turn over a complete recording of C.C.'s statement, ineffective assistance of counsel for failing to

---

[1] The underlying state court record was attached as an appendix to Respondent's Response to Order to Show Cause, and was filed under seal because it contains information excluded from release by the Florida Public Records Act. DE 33. The appendix contains a table of contents listing Exhibits 1-20. For ease of reference, citations to the appendix include the exhibit number, following by the page number within the exhibit, the bate stamp number, and/or the title of the document.

obtain the complete taped statement, and that there was insufficient evidence presented at trial that C.C. engaged in oral sex with Petitioner before reaching 12 years of age. App. Ex. 9. The trial court entered an order summarily denying some of Petitioner's claims and ordering others to be resolved at an evidentiary hearing. App. Ex. 12. On February 1, 2010, an evidentiary hearing was held. App. Ex. 13. After holding the evidentiary hearing, the trial court denied Petitioner's Motion for Post-Conviction Relief and denied Petitioner's motion for rehearing. App. Ex. 13; App. Ex. 14. Petitioner appealed the order denying his rule 3.850 motion to the Fourth District Court of Appeal. App. Ex. 15. On October 24, 2012, the Fourth District Court of Appeal issued an opinion Per Curiam Affirmed. App. Ex. 19.

Petitioner filed the instant federal habeas action on February 26, 2013. DE 1. Petitioner seeks relief on the following grounds: (1) the State violated Brady v. Maryland, 373 U.S. 83 (1963), by failing to disclose a complete copy of the victim's recorded statement, when the missing portion included exculpatory and inconsistent statements; (2) assuming defense counsel had knowledge of the missing portion, his failure to impeach the victim's trial testimony with a prior inconsistent statement amounts to ineffective assistance of counsel; (3) the jury instruction provided for capital sexual battery deprived Petitioner of due process because it relieved the State of its burden to prove the commission of the sexual act alleged; and (4) the evidence presented was insufficient to prove capital sexual battery on a child under twelve, which is a violation of due process.

Respondent asserts that Petitioner's claims are without merit because: (1) defense counsel was in possession of all information contained in the missing portion of the tape

3

and appropriately cross-examined the victim regarding inconsistencies; (2) Petitioner failed to demonstrate his counsel's performance was constitutionally defective; (3) the sexual battery jury instruction did not mislead the jury to relieve the State of its burden of proof; and (4) the State's evidence was sufficient to establish that Petitioner engaged in oral sex with the victim prior to her reaching the age of 12.[2]

## II.   HABEAS STANDARD

A federal court may entertain a petition for a writ of habeas corpus from a state prisoner who claims his custody violates the "Constitution or the laws or treaties of the United States." 28 U.S.C. § 2254(a).  Where a petitioner's claim raises a federal question that was adjudicated on the merits in state court, the federal court must afford a high level of deference to the state court's decision. See Ferguson v. Culliver, 527 F.3d 1144, 1146 (11th Cir. 2008).  A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits, which warrants deference. Ferguson, 527 F.3d at 1146; Wright v. Sec'y Dep't of Corr., 278 F.3d 1245, 1253–54 (11th Cir. 2002); Peoples v. Campbell, 377 F.3d 1208, 1227 (11th Cir. 2004), cert. denied, 545 U.S. 1142 (2005).

Habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[2] The timeliness of Petitioner's request for habeas relief is not challenged by Respondent.  DE 26, 6.

28 U.S.C. § 2254(d); see also Brown v. Payton, 544 U.S. 133, 141 (2005); Price v. Vincent, 538 U.S. 634, 638–39 (2003).

(1) Ground one: decision is an unreasonable application or is contrary to federal law

"Clearly established federal law" consists of the governing legal principles, rather than the dicta, set forth in U.S. Supreme Court decisions at the time the state court issues its decision. Thaler v. Haynes, 559 U.S. 43, 47 (2010); Carey v. Musladin, 549 U.S. 70, 74 (2006). In cases where nothing in the Supreme Court's jurisprudence addresses the issue on point or the precedent is ambiguous and gives no clear answer to the question, it cannot be said that the state court's conclusion is contrary to, or constitutes an unreasonable application of, "clearly established Federal law." Wright v. Van Patten, 552 U.S. 120, 126 (2008); Mitchell v. Esparza, 540 U.S. 12, 15–16 (2003).

"A state court decision involves an unreasonable application of federal law when it identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case, or when it unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Ponticelli v. Sec'y Dep't of Corr., 690 F.2d 1271, 1291 (11th Cir. 2012). The "unreasonable application" inquiry "requires the state court decision to be more than incorrect or erroneous;" it must be "objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75–77 (2003); Mitchell, 540 U.S. at 17–18. Depending upon the legal principle at issue, there can be a range of reasonable applications. Yarborough v. Alvarado, 541 U.S. 652, 663–64 (2004). Thus, a state court's decision is not subject to federal review de novo;

habeas relief is only available upon a showing that the state court decision meets the "objectively unreasonable" standard. Id. at 665–66.

(2) Ground two: decision is an unreasonable determination of the facts

A § 2254 petitioner can also obtain relief by showing that a state court decision "was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(2). A factual finding by a state court is presumed correct and a petitioner must rebut this statutory "presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Miller–El v. Dretke, 545 U.S. 231, 240 (2005).

III.   DISCUSSION

    A. The state court's finding that there was no Brady violation is not objectively unreasonable.

Petitioner's claim does not meet the requirements of a Brady violation. First, there was no favorable evidence suppressed by the Government because defense counsel received the complete tape during trial and defense counsel was on notice before trial of the information contained on the complete tape. Second, even if the evidence had been suppressed by the State, the Petitioner would not have been prejudiced because Petitioner has not demonstrated that the use of the information for impeachment would have changed the outcome of the trial.

    1. Trial testimony and testimony during evidentiary hearing

Petitioner claims that the State failed to provide to defense counsel a complete recorded statement of C.C., which contained impeachment material. In response to Petitioner's motion for post-conviction relief, an evidentiary hearing was held on February

1, 2010 before Circuit Court Judge Jeffrey J. Colbath to determine whether a Brady violation had in fact occurred.  See App. Ex. 12; App. Ex. 13.  During law enforcement's investigation of the crimes at issue, C.C. gave a recorded statement to Detective Umphrey on February 20, 2005.  App. Ex. 13, 29.  Defense counsel invoked reciprocal discovery and provided a blank tape to the Palm Beach County Sheriff's Office (PBSO) in order to get a copy of the statement.  App. Ex. 13, 52.  Defense counsel received the tape back from PBSO with the victim's statement; however, due to what defense counsel believes was an error in making the recording, only the first half of the tape was copied and provided to defense counsel.  App. Ex. 13, 60-65.

There were some discrepancies among those involved as to when and how the tape was disclosed.  Mr. Franklin testified that he was not sure when he received the complete tape; but that he was "positive" that he was handed the complete tape sometime during the middle of trial.  App. Ex. 13, 97, 99.  Mr. Franklin believed that local counsel, Christopher Jette,[3] went into one of the witness rooms and reviewed the tape during trial.  App. Ex. 13, 99.  Handwritten notes from Mr. Franklin's file were entered into evidence, which appear to summarize the remaining portion of C.C.'s statement.  App. Ex. 13, 69, 70.  Mr. Jette stated that the notes were in his own handwriting, but that he could not remember when the notes were written and he does not recall listening to the tape during trial.  App. Ex. 13, 166.  However, Mr. Jette later states that he must have written the notes sometime "during the period of the trial."  App. Ex. 13, 169.  The prosecuting attorney, Stacey Ibarra, stated

---

[3] Mr. Jette testified that he was a friend of Petitioner's and he was Petitioner's family law attorney.  App. Ex. 13, 183-87.

that she has no recollection of giving the tape to defense counsel during the trial. App. Ex. 13, 232.

Evidence was presented at trial that Petitioner engaged in sexual activity with other minors, and that Petitioner engaged in oral sex with C.C. when C.C. was under the age of 12. During trial, a friend of C.C.'s brother testified that Petitioner inappropriately touched her on numerous occasions when she was 13 years old. App. Ex. 2 Trial Tr. vol. III, 380-92. C.C.'s sister, J.D., testified that she performed oral sex on the Petitioner in order to get money or to get out of being "grounded." App. Ex. 2 Trial Tr. vol. III, 441-442. C.C. also testified that she entered into deals with the Petitioner in exchange for sexual favors. App. Ex. 2, Trial Tr. vol. V, 571. C.C. testified that she performed oral sex on Petitioner before her sister, J.D., left home, App. Ex. 2 Trial Tr. vol. IV, 565-66, which J.D. stated occurred in September 1999, App. Ex. 2 Trial Tr. vol. III, 449-50. C.C. would have been ten years old at that time. See App. Ex. 2 Trial Tr. vol. III, 450. C.C. testified that she performed oral sex on Petitioner while she was in the Jacuzzi with Petitioner having a discussion about her biological father and his sexual abuse of J.D. and herself.[4] App. Ex. 2 Trial Tr. vol. IV, 560, 565-566. C.C. believed that this conversation occurred around the time she was seven or eight years old. App. Ex. 2 Trial Tr. vol. IV, 560, 565-566. She stated that it also occurred on other occasions in different locations. App. Ex. 2 Trial Tr. vol. IV, 566.

Petitioner specifically points to the following portion of C.C.'s recorded statement to Detective Umphrey, read by Mr. Franklin during the evidentiary hearing:

---

[4] J.D. had made prior allegations that C.C.'s biological father, Ledbetter, had sexually abused her; and C.C. testified at trial that she told Petitioner that Ledbetter had also sexually abused her, when in fact, it wasn't true. App. Ex. 2, Trial Tr. vol. V, 560-61.

"Has he touched you in other ways?" And she says "uhm, I gave him a blow-job a couple of times." . . . "okay, and when did this happen." C.C. says "uhm, it hasn't happened in this house, but it's happened in the other house." Detective Umphrey says "in Boca." [C.C.] says "yes." Detective Umphrey says "okay, do you remember when it happened in Boca, how long ago." She says "it was a while ago, I don't really know." Detective Umphrey says "like a year ago." [C.C.] says "not that long ago." Detective Umphrey says "like you moved out in the summer, would it have been like the [sic] near the time you moved out." [C.C.] says "yes, somewhere around there." Detective Umphrey says "okay, so before you moved out." [C.C.] says "yeah."

App. Ex. 13, 86. Petitioner argues that this portion of the statement, taken on February 20, 2005, when C.C. was 16 years old, is viable impeachment material because it could be interpreted to show that the first time oral sex occurred, C.C. was over the age of 12. This would contradict C.C.'s trial testimony that the oral sex happened before she turned 12.

However, defense counsel, Mr. Franklin, did not view this statement as being viable impeachment evidence during trial. Mr. Franklin stated that he had the ability to recall C.C. if he needed to do so after receiving the complete tape. App. Ex. 13, 97-98. However, Mr. Franklin decided not to further discuss the statement with C.C. because it was not consistent with his defense strategy. App. Ex. 13, 98. Mr. Franklin stated, "I've found in my experience for juries to be rather forgiving as to timeframes and issues, and I thought it was much more important to emphasize with [C.C.] and [J.D.] rather than years and dates, the fact was that they were admitted liars." App. Ex. 13, 113. Mr. Franklin further states: "I potentially could have gone back and emphasized 'you said this on such and such a date,' and used all those details. But again, the jury is going to be re-hearing

allegations of sexual abuse, issues of inappropriate conduct, versus having heard 'I lied.'[5] App. Ex. 13, 153.

Further, Mr. Franklin stated during the evidentiary hearing that while he was unaware that oral sex was discussed on the tape itself, he was aware, based on Detective Umphrey's report, that the victim had stated that there were other sexual acts, including oral sex, which had occurred while C.C. lived in Boca Raton. App. Ex. 13, 83-84. The probable cause affidavit completed by Detective Umphrey states that on February 18, 2005: "[t]he victim said there have been many incidents that included the victim performing oral sex on the defendant . . . these incidents have occurred two or three times in their current residence, and several times over the last couple of years when they lived in Boca Raton, Florida." App. Ex. 1, 115.

2.   Findings made during evidentiary hearing.

Judge Jeffrey J. Colbath ruled from the bench during the evidentiary hearing, finding that there was no Brady violation because Mr. Franklin had access to the information contained on the complete tape. App. Ex. 13, 250. "[H]e was on notice both by way of the police reports and by the tape itself, and the transcript of the tape that there was more of it." App. Ex. 13, 250. Further, the State was not willfully or grossly negligent in failing to provide a completed copy of the transcript, and thus did not do anything to suppress the remaining portion of the tape. App. Ex. 13, 251.

In addition, even assuming that the evidence had been suppressed, willfully or because of gross negligence, Judge Colbath found that the information withheld was not

---

[5] Mr. Franklin is referring to C.C. testifying at trial that she at one time told Petitioner that her natural father had sexually abused her, when in fact, it wasn't true. App. Ex. 2, Trial Tr. vol. V, 560-61.

exculpatory, "nor did it lend itself to any additional meaningful impeachment or cross-examination effort by Mr. Franklin."  App. Ex. 13, 251.  Specifically, Judge Colbath stated, "The evidence presented today falls short of a showing that there was a reasonable likelihood that the outcome of the trial would have been different had this tape, the balance of the tape been presented or disclosed or had been digested by Mr. Franklin weeks before the trial with the ability to coolly deliberate on what impact it might have on his trial strategy." App. Ex. 13, 251-252.

The Fourth District Court of Appeal affirmed the lower court's decision.  App. Ex. 19.

### 3.   Brady standard

"There are three components of a true Brady violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." Strickler v. Greene, 527 U.S. 263, 280-81 (1999); Brady v. Maryland, 373 U.S. 83, 87 (1983).  There is not a Brady violation unless the nondisclosure was so serious that there is a reasonable probability [not a mere possibility] that the suppressed evidence would have produced a different verdict." Strickler, 527 U.S. at 281, 296.  "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." United States v. Bagley, 473 U.S. 667, 682 (1985); see also Strickler, 527 U.S. at 290 ("[T]he question is whether the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.").

4.  Analysis

Here, the State court did not apply Brady to the facts of this case in an objectively unreasonable manner.  First, the statement at issue regarding when C.C. performed oral sex on Petitioner was not "suppressed" by the State.  Mr. Franklin and Mr. Jette definitively state that the tape was provided to them before the end of trial.  And Mr. Franklin even admits that he had the ability to recall C.C. and confront her with the statement on the tape, but chose not to do so for strategic reasons.  Mr. Franklin's own testimony supports that he received C.C.'s complete statement before the conclusion of trial.[6]  Even more importantly, defense counsel was on notice before trial as to the content of the complete statement by way of Detective Umphrey's report, which stated that C.C. discussed incidences of oral sex with Petitioner that had occurred well after C.C. reached the age of 12.  The state court's factual finding that Defense counsel was on notice of the substance of C.C.'s statement before trial is presumed to be correct.  Petitioner has not made a contrary showing by clear and convincing evidence.

Further, even if Petitioner could make a showing that the statement at issue had been suppressed, Petitioner has not shown that the outcome of the trial would have been different, had defense counsel impeached C.C. with her exact statement regarding when the oral sex occurred.  While the statement at issue can be interpreted to mean that the first time C.C. performed oral sex on Petitioner she was over the age of 12, it is not entirely clear that C.C. is discussing the *first time* she performs oral sex on Petitioner.  However,

---

[6] The Court did not find Supreme Court case law specifically addressing the issue of mid-trial disclosure of alleged Brady evidence that would be controlling on a habeas determination; however, in an abundance of caution, the Court points to United States v. McGhee, 553 Fed. App'x 895, 900 (11th Cir. 2014), finding the Government's mid-trial disclosure of ATF files did not call for reversal where defendant was allowed to recall an agent regarding what was contained in the files.

C.C. testifies at trial that the first time she performed oral sex on Petitioner was before she turned 12.

In addition, Mr. Franklin did attempt to impeach C.C. with her prior statement to Detective Umphrey.  App. Ex. 2 Trial Tr. vol. IV, 572-73.  Mr. Franklin questioned C.C. as to why she did not disclose everything to Detective Umphrey, such as the fact that Petitioner performed oral sex upon C.C.  App. Ex. 2 Trial Tr. vol. IV, 572-73.  C.C. stated that she could not remember whether she discussed oral sex during the taped statement to Detective Umphrey; and she admitted that she did not disclose some of the sexual acts initially because she was embarrassed and nervous.  App. Ex. 2 Trial Tr. vol. IV, 572-73.

Any further cross-examination on her prior statements to Detective Umphrey would have likely been met with the same response from C.C.  It cannot be said that cross-examining C.C. with her specific statement to Detective Umphrey regarding oral sex would have put the whole case in such a different light as to undermine confidence in the verdict where C.C. admits that she did not tell everything to Detective Umphrey because she was embarrassed and nervous at the time.  Therefore, the State court's holding that Petitioner would not have suffered any prejudice had the statement been suppressed is not objectively unreasonable.  Petitioner is not entitled to relief on this ground.

    B.  <u>The state court's finding that defense counsel's performance was not ineffective is not objectively unreasonable.</u>

Petitioner claims that defense counsel's performance was deficient because he failed to specifically impeach C.C. with C.C.'s prior statement to Detective Umphrey regarding when she performed oral sex on Petitioner.  However, Petitioner has not made a showing that defense counsel's performance fell below the wide range of assistance that is

considered reasonable; and Petitioner cannot show that the outcome of the trial would have been different had defense counsel further questioned C.C. about her prior statement.

    1.  <u>Testimony during evidentiary hearing</u>

Petitioner's trial counsel, James Russell Franklin, testified at the evidentiary hearing to his qualifications and experience.  App. Ex. 13, 37.  At the time of the hearing, Mr. Franklin was board certified by the Florida Bar in criminal trial law, and had been practicing criminal law as either an Assistant State Attorney or in private criminal defense since 1989.  App. Ex. 13, 37-38.  While serving as an Assistant State Attorney in the 10th Circuit, Mr. Franklin was assigned for two to three years to the Special Prosecution Division, handling cases involving physical and sexual abuse of children.  App. Ex. 13, 38.  As a prosecutor, Mr. Franklin handled between 25-50 jury trials on child sex cases, and as a private criminal defense attorney he handled 5-10 trials.

During the evidentiary hearing, Mr. Franklin explained his theory of defense.  Specifically, it was the defense's position that C.C., her sister, J.D., and her brother, A.J., had significant motives for fabrication and were not credible witnesses.  App. Ex. 13, 40, 46.  Mr. Franklin's main focus of attacking C.C.'s credibility was "not to try to get out in cross examination . . . the specific things that she said," but rather that when law enforcement initially questioned C.C. about the allegations, and she was in a safe and secure place, she denied that any sort of abuse was going on.  App. Ex. 13, 50.  When initial allegations were made against Petitioner, a family friend, June Lytle, questioned C.C. and she denied any abuse.  App. Ex. 13, 50.  Then 5 days later, C.C. disclosed that there had been abuse.  App. Ex. 13, 51.  It was the defense's theory that C.C. fabricated the

story to assist her sister, J.D., and A.J.'s friend, who disclosed that there had been abuse first. App. Ex. 13, 51.

When asked specifically why he did not alert the Court to the disclosure of the incomplete tape during trial, Mr. Franklin stated that "my focus on [C.C.] rather than emphasizing or going over what she said happened was more focused on the fact that she had the ability to disclose in safe harbor, and didn't." App. Ex. 13, 98. Mr. Franklin stated that he was always cognizant of the fact that the victim's age at the time of abuse was important because it would determine whether the crime was a capital offense. App. Ex. 13, 47. However, he stated, "[I]t's a dangerous issue when you start cross examining a victim of sexual abuse going into details." App. Ex. 13, 82-83. Mr. Franklin pointed out that "I've found in my experience for juries to be rather forgiving as to timeframes and issues, and I thought it was much more important to emphasize with [C.C.] and [J.D.] rather than years and dates, the fact was that they were admitted liars." App. Ex. 13, 113.

2. Findings made during evidentiary hearing.

Judge Colbath found that there was no evidence presented during the evidentiary hearing that defense counsel "failed to meet an acceptable standard of care in the representation of [Petitioner]" or that his performance was deficient. App. Ex. 13, 251. Specifically, Judge Colbath states:

> The evidence presented today falls short of a showing that there was a reasonable likelihood that the outcome of the trial would have been different had this tape, the balance of the tape been presented or disclosed or had been digested by Mr. Franklin weeks before the trial with the ability to coolly deliberate on what impact it might have on his trial strategy. To the contrary, I find that his trial strategy was the most conspicuous one to pursue. And the fact that it didn't work out, doesn't make his performance deficient or falling below a standard of care.

App. Ex. 13, 251-252.

The Fourth District Court of Appeal affirmed the lower court's decision.  App. Ex. 19.

### 3.   Standard for Ineffective Assistance of Counsel

Under Strickland, Petitioner must show that: (1) counsel's performance was deficient; and (2) counsel's deficient performance prejudiced him.   Strickland v. Washington, 466 U.S. 668, 687 (1984).   There is a strong presumption that counsel's conduct fell within the range of reasonable professional assistance.  Id. at 689.  Counsel's performance is deficient only if it falls below the wide range of competence demanded of lawyers in criminal cases.  Id.  To prove that Petitioner suffered prejudice, Petitioner must establish a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.   A reasonable probability is a probability sufficient to undermine confidence in the outcome."   Id. at 694.   Further, a habeas petitioner has the additional requirement of showing that the state court applied Strickland to the facts of the case "in an objectively unreasonably manner."  See Bell v. Cone, 535 U.S. 685, 698-99 (2002).

### 4.   Analysis

Here, Petitioner has not overcome the presumption that Mr. Franklin's performance fell within the wide range of reasonable assistance.  Petitioner's primary argument is that there was no reasonable basis for Mr. Franklin not to impeach C.C. with her statement to Detective Umphrey regarding when the oral sex first occurred.  However, Mr. Franklin, who had experience as both a prosecutor and defense attorney in child sex cases,

adequately explained why pressing C.C. on these details may have been detrimental to the defense; specifically, that juries tend to forgive a witness in these situations with regard to timeframes and details.

Further, as discussed above, Mr. Franklin did in fact attempt to impeach C.C. with her previous statement to Detective Umphrey, by asking her why she had not disclosed some incidences of oral sex to Detective Umphrey.  And C.C. admits that she did not disclose everything then because she was embarrassed and scared.  Thus, the effectiveness of using the specific statement to impeach C.C. is questionable, and would have likely been met with the same response from C.C.

Evidence was presented at trial that Petitioner engaged in sexual activity with other minors, and that he engaged in oral sex with C.C. when she was under the age of 12. Petitioner has not established that a further attempt to impeach C.C. based on her previous statements to Detective Umphrey would have resulted in a different outcome at trial. Therefore, Petitioner has not demonstrated that the state court applied <u>Strickland</u> to the facts of this case in an objectively unreasonable manner.

    C.  <u>The jury instruction used for capital sexual battery did not violate Petitioner's<br>due process rights.</u>

The sexual battery jury instruction read during Petitioner's trial did not relieve the State of proving that Petitioner carried out the act of sexual battery; and therefore its use at trial did not violate Petitioner's due process.  A jury instruction that relieves the prosecution of its burden of proof violates due process.  <u>Sandstrom v. Montana</u>, 442 U.S. 510, 520 (1979).  The State is prohibited from "using evidentiary presumptions in a jury charge that have the effect of relieving the State of its burden of persuasion beyond a

reasonable doubt of every essential element of a crime." <u>Francis v. Franklin</u>, 471 U.S. 307, 313 (1985). "Whether a defendant has been accorded his constitutional rights depends upon the way in which a reasonable juror could have interpreted the instruction." <u>Sandstrom v. Montana</u>, 442 U.S. 510, 514 (1979).

However, it is not merely enough that the jury instruction is undesirable or erroneous under state law, "[t]he only question for this Court is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" <u>Estelle v. McGuire</u>, 502 U.S. 62, 71-72 (1991) (citing <u>Cupp v. Naughten</u>, 414 U.S. 141, 147 (1973)). Further, "the instruction 'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record. <u>Estelle</u>, 502 U.S. at 72 (citing <u>Cupp</u>, 414 U.S. at 147).

Here, Petitioner was charged with and found guilty of sexual battery on a person less than 12 years of age, in violation of Florida Statute Section 794.011(2) (2006). Section 794.011(1)(h) defines sexual battery as: "oral, anal, or vaginal penetration by, or union with, the sexual organ of another." Sexual battery by an individual 18 years or older upon a person less than 12 years of age is a felony punishable by life. Fla. Stat. 794.011(2)(a) (2006). The Florida Standard Jury Instruction for Section 794.011(2) includes the following two elements:

> 1. (Victim) was less than 12 years of age.
> 2.     a. Defendant committed an act [upon] [with] (victim) in which the sexual organ of the [(defendant)] . . . penetrated or had union with the . . . [mouth] of the [(victim)].

During Petitioner's trial, the jury was instructed on the following jury instruction for sexual battery:

> To prove the crime of sexual battery upon a person less than twelve years of age, the State must prove the following two elements beyond a reasonable doubt:
> 1. C.C. was less than twelve years of age.
> 2. GARY LEE CROOKS committed an act upon *or enticed* C.C. to commit an act in which the defendant's penis penetrated C.C.'s mouth.
> However, any act done for bona fide medical purposes is not sexual battery. "Union" means contact.

App. Ex. 1, 60; App. Ex. 2, Trial Tr. vol. V, 713-14 (emphasis added).   Petitioner specifically objects to the use of the word "enticed" in the instruction and argues that it lessens the State's burden of proof by allowing the jury to find Petitioner guilty of sexual battery if he solicited C.C. for oral sex, rather than actually engaging in the act.

The Court acknowledges that the word "entice" is used at times to mean solicit; and the Florida Standard Jury Instruction does not include the word "entice." However, it does not relieve the State of proving that the act occurred. Specifically, the jury was required to find beyond a reasonable doubt that "[Petitioner] committed an act upon or enticed C.C. to commit an act *in which the defendant's penis penetrated C.C.'s mouth.*"   App. Ex. 1, 60 (emphasis added). The instruction required the jury to find that Petitioner engaged in the conduct and did not merely attempt to entice C.C. to do so.

This reading of the instruction is further supported by a review of the trial record. See Estelle, 502 U.S. at 72 (citing Cupp, 414 U.S. at 147) (finding that jury instruction "'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record"). During the prosecution's closing argument, Stacey Ibarra discusses the two elements of sexual battery, specifically stating that with regard to element two, contact needed to occur and that C.C. testified that her mouth had contact with the Petitioner's penis. App. Ex. 2, Trial Tr. vol. V, 658-659. The plain

reading of the jury instruction, including the word "entice," is that regardless of how it happened, whether C.C. was bribed or otherwise,[7] Petitioner was guilty of sexual battery if his penis penetrated C.C.'s mouth.

In addition, the jury was separately instructed on the lesser charge of attempted sexual battery, as follows: "[O]ne, Gary Lee Crooks did some act towards committing the crime of sexual battery on a person less than 12 years of age . . . and, [t]wo, he would have committed the crime, except that someone prevented him from committing the crime of sexual battery on a person less than 12 years of age or he failed." App. Ex. 2, Trial Tr. vol. V, 714-715. This instruction of attempted sexual battery further clarified for a reasonable jury member that the charge for sexual battery was not merely an attempt or a solicitation to engage in sexual activity.

Further, there was no evidence presented by either side during trial that made attempted or solicited sexual battery an issue in this case. It was the prosecution's position that the complete acts occurred and were not merely attempted by Petitioner. And it was the Defense's position that C.C. fabricated her entire story and was not credible. There was no mention of Petitioner soliciting or attempting to engage in sexual activity, but being unable to do so for some reason. Defense counsel stated during his closing argument that "these lesser[] [included offenses] aren't an issue." App. Ex. 2, Trial Tr. vol. V, 697.

Therefore, after considering the context of the instructions as a whole and the trial record, the Court finds that the jury instruction did not relieve the State of proving the

---

[7] As the prosecutor noted in her closing argument, there was evidence presented during trial that C.C. performed sexual acts with Petitioner in exchange for favors. See App. Ex. 2, Trial Tr. vol. V, 664. C.C. testified that before her sister left she had been entering into these deals with the Petitioner. App. Ex. 2, Trial Tr. vol. V, 571.

elements of capital sexual battery.   A reasonable jury member would interpret the instruction to require actual contact and not merely an attempt by Petitioner to entice C.C. to make contact.  The state court's finding in this regard is not objectively unreasonable.

> D. <u>The State presented sufficient evidence that the victim was under the age of 12 at the time the sexual battery occurred.</u>

The Court finds that after reviewing the record in the light most favorable to the prosecution, a rational jury member could find that Petitioner was guilty beyond a reasonable doubt of capital sexual battery.  "The Due Process Clause of the Fourteenth Amendment 'protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.'"  <u>Francis</u>, 471 U.S. at 313 (citing <u>In re Winship</u>, 397 U.S. 358, 364 (1970)).  A conviction based on insufficient evidence violates due process.  <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979).   In determining whether there is sufficient evidence to support a conviction on a petition for habeas relief, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  <u>Id.</u> at 319.

Petitioner was charged with and convicted of sexual battery on a person less than 12 years of age, in violation of Florida Statute Section 794.011(2)(a) (2006), and is serving a life sentence for this conviction.   Petitioner argues that C.C.'s testimony was not sufficient to prove that the sexual battery occurred prior to her reaching the age of 12. Petitioner points to the fact that C.C. was not unequivocal in her testimony, but rather "believed" and was "pretty sure" as to when the oral sex occurred.

While the Court agrees with Petitioner that C.C.'s testimony reflects that she was not absolutely sure when the abuse occurred, C.C. did testify to the abuse happening before or after different milestones in her life, which supported that the oral sex occurred before she reached the age of 12. It would arguably be more suspect if C.C. could testify years later to the exact date she first performed oral sex on Petitioner. C.C. testified that she performed oral sex on Petitioner before her sister, J.D., left home, App. Ex. 2 Trial Tr. vol. IV, 565-66, which J.D. stated occurred in September 1999, App. Ex. 2 Trial Tr. vol. III, 449-50. C.C. would have been ten years old at that time. See App. Ex. 2 Trial Tr. vol. III, 450. C.C. testified that she performed oral sex on Petitioner while she was in the Jacuzzi with Petitioner having a discussion about her biological father and his sexual abuse of J.D. and herself.[8] App. Ex. 2 Trial Tr. vol. IV, 560, 565-566. C.C. believed that this conversation occurred around the time she was seven or eight years old. App. Ex. 2 Trial Tr. vol. IV, 560, 565-566. She stated that it also occurred on other occasions in different locations. App. Ex. 2 Trial Tr. vol. IV, 566. Further, C.C.'s statement to Detective Umphrey could be interpreted to mean that the first time she performed oral sex on Petitioner she was over the age of 12. However, it is not entirely clear that C.C. is discussing the first time she performs oral sex and she later explains during trial that she didn't initially disclose all the details to Detective Umphrey because she was embarrassed and scared.

The jury had the benefit of observing C.C. testify and to determine C.C.'s credibility. Even without having the benefit of observing C.C.'s testimony, the Court finds

---

[8] J.D. had made prior allegations that C.C.'s biological father, Ledbetter, had sexually abused her; and C.C. testified at trial that she told Petitioner that Ledbetter had also sexually abused her, when in fact, it wasn't true. App. Ex. 2, Trial Tr. vol. V, 560-61.

that there is more than enough evidence in the record for a rational jury member to find that C.C. performed oral sex on Petitioner before she reached the age of 12.  The State court's finding in this regard is not objectively unreasonable.

III.    CONCLUSION AND RECOMMENDATION

Petitioner is not entitled to § 2254 relief for the following reasons: (A) there was no Brady violation for the State's failure to turn over the complete statement of C.C. before trial began;  (B) defense counsel's performance was not ineffective for not further impeaching C.C. with her statement to Detective Umphrey;  (C) the jury instruction for capital sexual battery did not violate due process; and (D) the State presented sufficient evidence that C.C. was under the age of 12 at the time of the sexual battery.  Further, no evidentiary hearing is required because the pertinent facts are fully developed in the record. See Schriro v. Landrigan, 550 U.S. 465, 473–475 (2007); Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004).

Accordingly, the Court RECOMMENDS that Petitioner's Petition for Writ of Habeas Corpus filed under 28 U.S.C. § 2254 (DE 1) be DENIED.

IV.    NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with U.S. District Judge Darrin P. Gayles within 14 days after being served with a copy.  28 U.S.C. § 636(b)(1)(C).  Failure to file timely objections may limit the scope of appellate review of factual findings contained herein.  U.S. v. Warren, 687 F.2d 347, 348 (11th Cir. 1982), cert. denied, 460 U.S. 1087 (1983).

DONE and RECOMMENDED in chambers at West Palm Beach, Florida, this 26 ᵗʰ
day of March, 2015.

DAVE LEE BRANNON
U.S. MAGISTRATE JUDGE